IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEPHANIE STUCKY, | ) CIVIL NO. 06-00002 JMS/LEK |
| | ) |
| Plaintiff, | ) |
| | ) ORDER GRANTING |
| vs. | ) DEFENDANTS' MOTION FOR |
| | ) JUDGMENT ON THE PLEADINGS |
| STATE OF HAWAII, DEPARTMENT | ) OR, IN THE ALTERNATIVE, FOR |
| OF EDUCATION; PATRICIA | ) SUMMARY JUDGMENT |
| HAMAMOTO, Superintendent; KEN | ) |
| NOMURA, Complex Area | ) |
| Superintendent; CATHERINE | ) |
| KILBORN, Principal, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Stephanie Stucky ("Stucky") alleges that Defendants State of Hawaii Department of Education ("DOE"), Catherine Kilborn ("Kilborn"), Ken Nomura ("Nomura"), and Patricia Hamamoto retaliated against her in violation of Title VII, discriminated against her on account of her gender in violation of Title IX, violated the Hawaii Fair Employment Act, and acted with such malice as to be liable for punitive damages.  The Defendants moved for a judgment on the pleadings or, in the alterative, for summary judgment.  For the following reasons,

the court GRANTS the Defendants' motion for judgment on the pleadings or, in

the alternative, for summary judgment.

## II. **BACKGROUND**

As a preliminary matter, the court notes that the record before it is

thin.  The only evidence that Stucky has provided to the court is her own nine

paragraph declaration.  Stucky has not provided the court with any documents,

testimony, third party declarations, or other support to substantiate her account of

events.  The Defendants' evidence is similarly scarce, consisting only of Kilborn's

declaration and two additional exhibits.  The following factual background comes

from this record and the Complaint.  In setting forth these facts, the court  draws

all reasonable inferences in favor of Stucky, the non-moving party.

**A.     Factual Background**

The DOE has employed Stucky as a teacher at Iao Intermediate

School ("Iao Intermediate") on Maui since 1982.  Stucky is one of two music

teachers at Iao Intermediate.  During her tenure at Iao Intermediate, Stucky has

filed several grievances, claims, and lawsuits.  On November 17, 1998, Stucky

filed an age discrimination complaint with the Hawaii Civil Rights Commission

("HCRC") against the DOE.  Stucky filed several union grievances against the

DOE, DOE administrators, and the then-principal of Iao Intermediate in the late

2

1990s and early 2000.  On January 11, 2000, Stucky filed a retaliation and discrimination complaint with the HCRC against the DOE.

Kilborn has been employed by the DOE since 1991 and has served as the principal of Iao Intermediate since 2003.  At the time of Stucky's previous legal filings, Kilborn was the vice-principal of Iao Intermediate.

As principal, Kilborn supervises the work of Iao Intermediate's teachers.  On February 17, 2005, Kilborn asked Stucky to provide a written explanation of her grades and grading policy.  According to Stucky, Iao Intermediate does not have a standard grading policy for teachers to follow and Kilborn did not ask other teachers for explanations of their grading policies or grades.  Stucky failed to provide Kilborn with a written explanation of her grading policies and grades, leading Kilborn to issue a written reprimand on February 25, 2005.  Kilborn Decl. ¶ 6; Kilborn Decl. Ex. A.

As part of her responsibilities, Kilborn also oversaw school expenditures.  At some point in time, Stucky filed a request to purchase various art supplies for her classroom.  According to Stucky, the DOE had $3,000 annually allocated to the music department for Stucky's use.  Stucky Decl. ¶ 8. Nonetheless, Kilborn delayed or denied Stucky's requests for books and instruments.  *Id*.  According to Stucky, Kilborn did not deny purchase requests

3

from other teachers.  Kilborn contests Stucky's version of the events, stating that she did not deny any purchase requests which Stucky properly brought before her. Kilborn Decl. ¶ 5.

Stucky's music classroom was moved to the Iao Intermediate's cafeteria in an apparent attempt to make room for a computer class.  Kilborn Decl. ¶ 8.  There is some confusion as to whether Stucky's former music classroom was ever used as a computer lab; in her declaration, Stucky claims that the computer lab was never created, but during oral argument, Stucky's counsel conceded that it had been created, although not for several months following the relocation. Regardless, Stucky asserts that Kilborn improperly and unilaterally relocated Stucky's classroom but did not change the location of the other music teacher.[1] According to Stucky, the cafeteria was unsuitable for music classes, lacked security storage for the instruments, and was infested with fleas and rats.  Stucky Decl. ¶¶ 4, 6.  Kilborn disputes that the cafeteria was infested with vermin, and alleges that Stucky manufactured the false tale and spread it amongst her students. Kilborn Decl. ¶ 8.  When parents complained to Kilborn about the infestation, Kilborn instructed Stucky to discontinue such communications.  *Id.*  Stucky also

---

[1] It is unclear from the record whether the other music teacher shared the same classroom as Stucky or taught in another room which was not earmarked for conversion into a computer lab.

4

claimed that she was reprimanded for attempting to investigate the thefts of two ukeleles stolen from the cafeteria.

Kilborn claims that Stucky repeatedly discussed her disputes and disagreements with the department and school during class.  Kilborn Decl. ¶ 7. After receiving complaints filed by parents in 2005, Kilborn instructed Stucky to refrain from engaging in such discussions.  *Id*.  In response, Stucky states that she conversed on school, rather than personal, matters with parents.  Stucky Decl. ¶ 4. Stucky does not clarify whether she ever spoke of her disputes with school officials in front of, or with, students during class time.

On April 5, 2005, Kilborn proposed reducing the offerings at Iao Intermediate and replacing Stucky's music class with a class in reading, mathematics, or world languages.  If enacted, the proposal would have eliminated Stucky's teaching position.  Nomura, the DOE Complex Area Superintendent for the Baldwin-Kekaulike-Maui area, concurred with Kilborn's proposal.  The Hawaii State Teachers Association ("HSTA") found that the action violated the HSTA-DOE contract and as a result did not vote on the proposed reduction. Stucky Decl. ¶ 7.  At some point around this time, Stucky herself filed a grievance regarding the improper staff reduction.  *Id.*  Due to internal inconsistencies in Stucky's own filings, it is unclear whether Stucky was terminated and then

5

reinstated, *see* Stucky Decl. ¶ 7; Wooten Supplemental Decl. ¶ 9, or whether the

termination was threatened but never voted on or finalized.  Stucky Decl. ¶ 7;

Wooten Supplemental Decl. ¶ 11*; see also* Kilborn Decl. ¶ 9.  Regardless, at the

time she filed her present Complaint, Stucky was still employed at Iao

Intermediate.[2]

**B.     Procedural Background**

        Stucky filed suit against the DOE, Kilborn, Nomura, and DOE

Superintendent Patricia Hamamoto in their official capacities (collectively "State

Defendants") on January 3, 2006 alleging retaliation in violation of Title VII

(Count I); gender discrimination in violation of Title IX (Count II); violation of

Hawaii Fair Employment Act (Count III); and mischief or criminal indifference

sufficient to sustain a claim for punitive damages (Count IV).  Stucky also sued

---

        [2]  In her opposition memorandum and declaration, Stucky claims that after she filed her
complaint in this court, the Defendants improperly suspended Stucky without pay for failing to
help a student who was injured.  This suspension formed the basis of a prior TRO which the
court considered and denied on April 14, 2006.  Stucky now argues that this suspension is
retaliation for filing the present suit.  This retaliation claim, and the corresponding facts, will not
be considered by the court at this time as they were not included in Stucky's Complaint but
instead form the basis of a separate Complaint filed by Stucky on November 2, 2006 against the
same defendants.  *See Stucky v. State of Hawaii Department of Education et al.*, Civ. No. 06-
00594 JMS/KSC.

Kilborn in her individual capacity.[3]  Stucky also filed two temporary restraining orders, both of which this court denied.

Kilborn, acting in her individual capacity, filed a Motion for Judgment on the Pleadings on September 22, 2006.  The State Defendants then filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment on September 27, 2006.  Stucky filed a Memorandum in Opposition to Kilborn's motion to dismiss on November 9, 2006.  Stucky did not file a Memorandum in Opposition to the State Defendants' Motion.

The court heard oral arguments on November 27, 2006.  At oral arguments, the court ordered supplemental briefing as to whether Stucky had exhausted her administrative remedies prior to filing in federal court.[4]  The parties filed the required briefing on December 11, 2006.  This Order followed.

\\\

\\\

---

[3]  When referring to the "State Defendants," the court includes Kilborn acting in her official capacity.  Claims against Kilborn acting in her individual capacity are referenced as such. The court uses the term "Defendants" to collectively refer to all State Defendants and Kilborn acting in her individual capacity.

[4]  The supplemental filings and exhibits show that Stucky received a "right to sue" letter from the Department of Justice dated October 20, 2005.  Stucky filed her Complaint in this court within the prescribed 90-day window.  As such, the court concludes that Stucky properly exhausted her administrative remedies as to her federal claims.

# III.  STANDARDS OF REVIEW

## A.    Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings.  Courts will grant judgment on the pleadings only where the plaintiff has failed to state a claim upon which relief can be granted.  A court will accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).  A complaint will not be dismissed under Rule 12 "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## B.    Motions for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c).   When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).   An issue of fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving parties bear the initial burden of demonstrating to the court that there is no factual dispute regarding those claims for which summary judgment is sought. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party does so, the burden falls upon the non-moving party to demonstrate that a triable issue of fact does exist. As such, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

\\\

\\\

# IV.  ANALYSIS

**A.     The State Defendants Are Entitled to Summary Judgment on the Claims for Retaliation in Violation of Title VII**

The court evaluates Stucky's Title VII retaliation claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, Stucky must first set forth evidence sufficient to make a prima facie retaliation claim under Title VII. To do so, Stucky must show that (1) she engaged in a protected activity opposing an unlawful employment practice; (2) she was subjected to an adverse employment action; and (3) the adverse employment action she suffered was causally connected to her participation in the protected activity.  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003).

### 1.     *Protected Activity*

Both parties agree that Stucky engaged in protected activities, namely a 1998 age discrimination complaint filed with the HCRC and a 2000 retaliation and discrimination complaint filed with the HCRC.[5]  However, Stucky additionally claims that union grievances filed against various school officials in

---

[5]  Kilborn was not named as a defendant in any of Stucky's HCRC complaints.  Kilborn Decl. ¶ 3.

2000 also qualify as protected activities.  The court disagrees.  To constitute a

"protected activity," a complaint, grievance, or claim must oppose Title VII

violations.  *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988)

("[T]he opposed conduct must fairly fall within the protection of Title VII to

sustain a claim of unlawful retaliation."); *Silver v. KCA, Inc.*, 586 F.2d 138, 142

(9th Cir. 1978) ("[U]nder the clear language of the 'opposition' clause . . . a case

of retaliation has not been made out unless the 'retaliation' relates to the

employee's opposition to a [Title VII] violation.").  Grievances filed for simple

contract violations of collective bargaining agreements do not qualify.[6]  Thus, only

Stucky's 1998 and 2000 discrimination and retaliation claims constitute protected

activities.

### 2.   *Adverse Employment Actions*

The State Defendants argue that Stucky was not subjected to adverse

employment actions because while Stucky was purportedly reprimanded, denied

classroom supplies, relocated, and threatened with termination, she was not

---

[6] This, of course, assumes that the "simple contract violations" do not concern protected
activity or status.  If a contract violation pertains to one's race or gender, for example, a
grievance regarding that contract violation would constitute a protected activity.  As Stucky has
failed to introduce any evidence regarding the nature of these previous union contract grievances,
the court cannot find that they are protected activities within the meaning of a Title VII
retaliation claim.

actually fired from her position.  The court rejects the State Defendants' arguments.

Under the standard set forth by the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), adverse employment actions for a Title VII retaliation claim consist of those actions likely to dissuade or deter a reasonable employee from making or supporting a charge of discrimination.  *Id.* at 2414-15.  If proven, elevated scrutiny, relocation of classroom location, reprimands, denial of supplies, and threatened termination are within the realm of actions anticipated by *Burlington* as the type of actions that could intimidate or punish an employee, thereby discouraging her from filing future discrimination complaints.  The court thus finds that Stucky has met her burden of setting forth a prima facie claim that she suffered adverse employment actions.

### 3.  *Causal Connection*

To establish causation, Stucky must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [her] firing and that but for such activity [she] would not have been fired."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) (citations omitted).  Stucky has failed to meet this burden.

Stucky engaged in the relevant protected activity in late 1998 and early 2000. The retaliatory acts she complains of began approximately five years later in early 2005. While courts may infer causation based on a close temporal proximity between the protected activity and alleged violation, the retaliation must be "fairly soon" after the protected activity. *Id.* at 1065. A temporal distance of several months makes a causal link more difficult to prove; a distance of five years severely undermines it. *See, e.g.*, *Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months not sufficiently close to create causal link); *Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (thirteen month gap was too long to establish causal connection; *Villiarimo*, 281 F.3d at 1065 (eighteen months too long to establish causal connection).

Nor has Stucky come forward with any other evidence that could constitute the semblance of a causal link. She fails to set forth any nexus between her HCRC complaints in 1998 and 2000 and Kilborn's action in 2005. In fact, Kilborn was not named in Stucky's HCRC complaints, and Stucky has provided no detail as to her relationship with Kilborn between 1998 and 2005. Thus, the entire claim of retaliation is premised on HCRC complaints filed seven and five years prior to the adverse employment actions.

13

Stucky's declaration is void of any evidence demonstrating that Kilborn -- who purportedly reprimanded Stucky, refused to purchase Stucky's requested supplies, and eventually proposed Stucky's removal -- harbored a retaliatory motive. Stucky's declaration states that when Kilborn was a vice-principal, she testified on behalf of her former boss who was sued by Stucky over five years earlier. Stucky Decl. ¶ 2. Even if true, this fails to establish a causal link between that event and Stucky's treatment in 2005.[7] Moreover, Kilborn's decision to remove Stucky was approved by Nomura and there is no evidence on the record to show that he harbored a retaliatory animus or was merely "rubber stamping" Kilborn's retaliatory decision. *See Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1232 (D. Haw. 2004) ("a plaintiff can . . . prove causation by presenting evidence that the decision maker simply 'rubber stamped' the decision of a subordinate who did have a retaliatory motive.").

Stucky also claims that her music classroom was relocated to make room for a computer course, but that the Defendants did not relocate the other

---

[7] In any event, Kilborn's previous court testimony appears unrelated to any protected activity. Stucky's declaration states that "And principal Kilborn continues to retaliate against Plaintiff for filing grievances over union contract violations at the school, as Plaintiff had over violations caused by former principal Ayson, for whom Defendant Kilborn testified in 2nd Circuit court, as her Vice Principal. [All errors in original.]" Stucky Decl. ¶ 2. This awkwardly worded phrasing demonstrates that Stucky's retaliation claim -- and by extension the attempted causal link based upon Kilborn's past testimony -- relates to union contract grievances filed against Kilborn's former boss, and not to Title VII protected activity.

music teacher and either did not create the computer lab or delayed creating it for several months.[8]  Again, Stucky has failed to offer any evidence to show a nexus between her aged HCRC complaints and the classroom relocation.  Further, Kilborn claims that the decision to relocate Stucky's music classroom was made by the school, and not her.

Under *Celotex*, when a defendant sets forth a statement of the law and set of facts justifying summary judgment, the plaintiff bears the burden of showing that the facts or law are not as demonstrated.  Stucky has utterly failed to do so here.  Rather than disputing the facts or legal arguments presented in either the State Defendants' or Kilborn's motions, Stucky -- through her legal counsel -- attempts to raise new and alternative legal claims for the first time,[9] makes

---

[8]  Stucky's pleadings state that the computer lab was never created.  However, during oral argument, Stucky's counsel admitted that the computer lab had been created, albeit after a delay of several months.  The court is unaware of the reason for the delay.

[9]  Stucky's opposition memorandum references eleven causes of action, including claims for violation of 42 U.S.C. §§ 1981, 1981A, 1983, 1985, 1986, and intentional infliction of emotional distress.  Mem. In Opp'n to Mot. of Def. Catherine Kilborn for Dismissal 2.  Just a page later, Stucky includes additional claims, writing about the "clear violation of Plaintiff's 14th Amendment Right to equal opportunity to contract and do business and non-discrimination in employment. [Incomplete sentence and capitalization errors in original.]  And it is also done in illegal retaliation for Plaintiff's exercising his [sic] 1st and 14th Amendment right [sic] to petition for redress by filing an administrative and judicial Complaint, concerning the Defendants [sic] past acts of discrimination and violation of the laws against the Plaintiff." *Id*. at 3.  For good measure -- and in case the court wasn't sufficiently confused -- Stucky also references 42 U.S.C. § 12101, the American Disabilities Act § 504. *Id*. at 11.

Stucky's attorney, Andre S. Wooten, has certainly been known to "cut and paste"

(continued...)

confusing arguments for injunctive relief,[10] unnecessarily block quotes cases,[11] and

copies and pastes verbatim the text of the Complaint.[12]  Stucky utterly fails to set

forth facts to show that Kilborn acted out of a retaliatory motive.

Given the forgoing, Stucky has failed to meet her legal burden of

alleging facts sufficient to show causation.  The court therefore GRANTS the

State Defendants' motion for summary judgment as to the Title VII claims.[13]

---

[9](...continued)

irrelevant material into his pleadings.  The court is uncertain if Stucky intended to make these claims in her case, or if Mr. Wooten simply engaged in thoughtless copying from his pleadings in other matters.  To the extent that Stucky did intend to raise these claims, the court finds that they go well beyond anything alleged in Stucky's Complaint which included only four causes of action, including claims for violations of Title VII, Title IX, Hawaii Fair Employment Act, and punitive damages.  The sole time the Complaint mentions 42 U.S.C. §§ 1981, 1981A, 1983, 1985, 1986, and 12101 is in the jurisdiction statement; this reference does not provide sufficient notice to the Defendants of the claims.  As it would be terribly unfair to the Defendants to allow Stucky to add new claims by raising them for the first time in her opposition to a motion for judgment on the pleadings or for summary judgment, these new claims, to the extent Stucky intended to raise them, are dismissed.  More to the point, these new legal claims do nothing to sustain Stucky's burden as to causation (or, for that matter, as to pretext).

[10]  Stucky spends time arguing that "Plaintiff is entitled to and in need of injunctive relief. Suspension with out [sic] pay would permanently damage her reputation and career as a music teacher with the Defendant D.O.E."  Mem. In Opp'n to Mot. of Def. Catherine Kilborn for Dismissal 8, 11.  This argument is irrelevant to the instant motions.

[11]  Of the fourteen pages included in her opposition memorandum, five pages are filled with block quotes of cases, some of which are only marginally relevant.

[12]  Pages 4-7 of Stucky's opposition motion are verbatim copies -- including paragraph numbers -- of paragraphs 8-29 of Stucky's Complaint.

[13]  If Stucky had been able to make out a prima facie claim under Title VII for retaliation -- which she did not -- the State Defendants would have been obligated under the *McDonnell Douglas* burden shifting framework to set forth a legitimate, non-retaliatory reason for their

(continued...)

**B.    The State Defendants Are Entitled to Summary Judgment As to Stucky's Claims for Gender Discrimination in Violation of Title IX**

Title IX prohibits gender discrimination by educational institutions receiving federal assistance.  20 U.S.C. § 1681(a).  Title IX discrimination claims are governed by the standards applied to Title VII discrimination claims.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000); *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996) ("[T]he method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case."); *Preston v. Commonwealth of Virginia ex rel New River Comm. College*, 31 F.3d 203, 207-08 (4th Cir. 1994) (holding that a Title IX discrimination claim can be evaluated in accordance with principles governing Title VII claims).  The *McDonnell Douglas* burden shifting standards apply to Stucky's Title IX gender discrimination claims.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1125 (E.D. Cal. 2006).

---

[13](...continued)

actions.  The State Defendants did so, asserting that Kilborn's actions resulted from complaints from parents and Kilborn's supervisory role.  Since the State Defendants set forth legitimate, non-retaliatory reasons for their actions, the burden would shift back to Stucky to show that these proffered explanations are either not worthy of credence or are pretextual.  Stucky failed to do so as she has not offered any evidence showing a retaliatory animus on the part of Kilborn or casting doubt as to the credibility of the DOE's explanation of events.  Kilborn was not the Principal of Iao Intermediate at the time Stucky filed her complaints in 1998 and 2000 and was not named in any of these actions.  Indeed, although Kilborn was a witness in one of those previous claims, nothing in Stucky's moving papers demonstrates that Kilborn harbored a retaliatory animus as a result of these actions.

### 1.   *Stucky Has Set Forth a Prima Facie Gender Discrimination Claim*

To set forth a prima facie Title IX gender discrimination claim, in addition to proving that the DOE received federal assistance, Stucky must show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) Stucky's employer treated her differently than a similarly situated individual not belonging to her protected class. *See Cornwell v. Electra Cent. Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (setting forth elements of a prima facie case under Title VII).   Here, Stucky is a female and as such belongs to a protected class.   Further, there is nothing suggesting that after 20 years of teaching, she was so incapable of performing her responsibilities that she was disqualified from Title VII or Title IX protection.   The court therefore turns to the final two criteria.

### a.   *Adverse employment action*

The standard for an adverse employment action for a discrimination claim differs from that of a retaliation claim discussed *supra*.   Rather than merely being an act which would discourage an employee from filing future claims, an adverse action for a discrimination claim must materially affect the compensation, terms, conditions or privileges of the plaintiff's employment.   *See* 42 U.S.C. § 2000e-2(a)(1).   Apart from the confusion as to whether Stucky was fired and then

reinstated or only threatened with termination, the record does not indicate that the terms of Stucky's employment were altered and indeed shows that in the time period relevant to this claim, Stucky received her standard salary.[14]

Nonetheless, the court is concerned that Kilborn and Nomura purportedly planned to terminate Stucky -- and according to Stucky actually did so -- but reversed their decision only after Stucky filed union grievances and after the HSTA declared that the termination violated the HSTA-DOE contract.[15]   A plaintiff with a legitimate gender discrimination claim should not be automatically barred from bringing her complaint merely because other independent forces acted to thwart the discriminatory acts of her supervisors.  However, given the court's ultimate determination that Stucky has failed to demonstrate pretext, a full consideration of this issue is not presently warranted.  In light of the court's concern over Kilborn's purported conduct and the fact that the record is unclear as

---

[14]  As previously mentioned, Stucky claims in her opposition memorandum that the State Defendants retaliated against her for filing the present suit by suspending her without pay.  While a suspension without pay would constitute an adverse employment action for the purposes of setting forth a prima facie Title IX claim, that suspension is not included in the matter presently before this court as it forms the basis of Stucky's subsequent complaint against both the State Defendants and Kilborn.

[15]  The court raised this concern at oral arguments and gave the parties an opportunity to file additional briefing on this issue.  The supplemental briefs, however, did not adequately answer the court's questions.  Since the court must construe the facts in the light most favorable to the non-moving party and make every reasonable inference on behalf of the non-moving party, and since the State Defendants failed to offer a factual account of the timeline of events leading up to the termination decision, the court accepts as true Stucky's version of events.

to whether Stucky was actually terminated and reinstated or merely threatened with termination, the court finds for the purposes of this motion that Stucky has shown an adverse employment action.

> b.       *Disparate treatment as compared to similarly situated males*

Stucky has, at the most basic level, shown that she received disparate treatment as per at least one similarly situated male.  When liberally making every inference in favor of Stucky, the court can infer that Stucky, a female, was required to provide written explanations of her grading policies, denied supplies, and had her music classroom relocated while another male music teacher[16] was not subjected to the same requirements.

## 2.       *The State Has Forwarded Legitimate, Non-Discriminatory Reasons*

The State Defendants have forwarded legitimate, non-discriminatory reasons for their actions.  Specifically, the State Defendants assert that they had received complaints from parents regarding Stucky's behavior; that the music classroom was being relocated in order to make room for a computer lab; and that in 2005 the school proposed abolishing certain elective classes (including music)

---

[16] Counsel clarified during oral argument that the second music teacher at Iao Intermediate was a male.

and replacing those classes with additional classes in reading, mathematics, and world languages.

### 3.      *Stucky Has Failed to Demonstrate Pretext*

Even if all of Stucky's allegations regarding her treatment vis-a-vis the treatment of the second male music teacher are true, a sample size of two individuals is not sufficient to allow the court to infer discrimination.  *See, e.g.*, *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 662-63 (9th Cir. 2002) (declining to find racial discrimination from a small sample size); *accord* *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986). Evidence drawn from such a small sample size has little predictive value and will not be relied upon by the court, especially when Stucky had a much larger population to draw from, namely, the other teachers at Iao Intermediate.  Stucky failed to demonstrate that any other female teacher was treated equally poorly or that any other similarly situated male teacher received more favorable treatment. She has also failed to offer any other evidence tending to show pretext.  Based on this, the court cannot conclude that Stucky was targeted or discriminated against on account of her gender.

\\\

\\\

**C.   Title VII and Title IX Claims Against Kilborn Acting in Her Individual Capacity Are Dismissed**

Stucky asserts both a retaliation claim and a gender discrimination claim against Kilborn acting in her individual capacity.  However, as counsel conceded during oral argument, neither Title VII nor Title IX provide for individual liability.  *See Pink v. Modoc Indian Health Project*, 157 F.3d 1185, 1189 (9th Cir. 1998) (determining there is no individual liability under Title VII); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (noting that Title IX does not provide for individual liability).  Thus, the court dismisses both the Title VII retaliation claim and Title IX gender discrimination claim against Kilborn in her individual capacity.

**D.   Claims for Violation of the Hawaii Fair Employment Act and for Punitive Damages Are Dismissed**

The only claims still remaining are counts III and IV, for violation of the Hawaii Fair Employment Act (Hawaii Revised Statute Chaps. 368 & 378) and punitive damages respectively.  The court observes that there is a question as to whether these claims were timely filed,[17] but also notes that the timeliness of the

---

[17]   Stucky received a right to sue letter from the HCRC dated September 23, 2005 giving her a 90-day window after receipt of the letter in which to bring suit for violation of Hawaii state laws.  On the record before the court, Stucky claims to have received the letter on September 30, 2005, giving her until December 29, 2005 to file her state law claims.  However, Stucky did not

(continued...)

state claims, including issues as to the applicable statute, tolling, or equitable estoppel, have not been fully addressed or briefed by the parties.   Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction[.]"  As a court of limited jurisdiction, the court declines to exercise supplemental jurisdiction over the Hawaii Fair Employment Act and punitive damages claims and hereby dismisses them pursuant to § 1367(c)(3).

## V.  <u>CONCLUSION</u>

For the previously discussed reasons, the court GRANTS the State Defendants' motion for summary judgment as to counts I and II and DISMISSES the remaining counts III and IV as to the State Defendants.  The court also DISMISSES counts I, II, III, and IV against Kilborn acting in her individual

\\\

\\\

\\\

\\\

---

[17](...continued)
file her Complaint until January 3, 2006.  Stucky correctly points out that December 31, 2005 and January 1, 2006 both fell on a weekend, and that January 2, 2006 was a holiday.  However, this is irrelevant as her final day to file her Complaint was December 29, 2005, a Thursday.

capacity.  The clerk of court is hereby directed to CLOSE the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 15, 2007.

J. Michael Seabright
United States District Judge

*Stucky v. State of Hawaii et al.*, Civ. No. 06-00002 JMS/LEK, Order Granting Defendants'
Motion for Judgment on the Pleadings, to Dismiss, or, in the Alternative, for Summary Judgment